Ms. Horn, you have the floor. Do you want rebuttal time? Yes. With the permission of the Court, I'd like to reserve three minutes, please. All right. Done. Please proceed. Thank you. This is Abigail Horn speaking. I represent Appellant Scott Capps. The District Court in this case miscalculated the sentencing guidelines for two reasons. First, the Court misapplied the Role Enhancement for Abuse of a Position of Trust, which does not apply under Note 2C of the Money Laundering Guideline. And second, the Court misapplied the Gross Receipts Enhancement to the Fraud Guideline, which does not apply under this Court's precedent in United States v. Stinson. I'd like to take the claims in the same order as the brief, beginning with the Abuse of a Position of Trust. In the briefing, there was some detail about how to do the grouping under 2S1.1, but there's no dispute about that, so unless the Court has any questions, I'll move on to the application, which is where there is a dispute between the parties. The dispute in this case is whether the Abuse of Trust Enhancement applies to Mr. Capps' money laundering itself, not the underlying offense. Right. Now, we've read your briefing on this, and you've read the government's response, as have we. We're certainly going to be asking Mr. Ignal on behalf of the government to express the government's position, but can you take on the argument that there could not have been money laundering but for the Abuse of a Position of Trust, and therefore it's linked in to the money laundering? I haven't done them justice, but I take it that that's their pitch, and I'd like your response. Yes. So that is the government's argument, and it's not a valid argument under Note 2C. That note draws a bright line between the underlying offense and the nail fraud. The Role Enhancement must be based on the money laundering and not the underlying offense. The problem is that the government's fact is on the wrong side of the line. So what would be an example of an Abuse of a Position of Trust in a money laundering context? Could you ever have it? Absolutely, Your Honor. That would be, for example, a defendant who works in a legitimate business and uses their position in that business to launder drug money. So it's the fact that the proceeds of this illegitimate work weren't around for them to be laundering until the abuse had already occurred. That's your position, right? That's exactly right. There were no proceeds at the time that the checks were directed to be endorsed to Mr. Tobin. But without Mr. Tobin's position, could the subsequent checks to him to launder the money, could those transactions have occurred? That's the essence of the government's argument, Your Honor, that Mr. Capp's position was necessary to the underlying offense and the underlying offense was necessary to the money laundering. But, of course, this argument is illogical because an underlying offense is always necessary to the crime of money laundering under 1956. The government's necessary argument would simply eviscerate the rule that the Commission created in Note 2C. If my colleagues don't have further probing for you on that, I do want to ask you about your argument that your client isn't responsible for the other enhancement because, in essence, I take it you're saying, hey, Vanguard isn't the victim here, so forget about that. Let me ask you real specifically why you think Vanguard is not covered as a financial institution that has an interest here sufficient for the guideline enhancement to apply. Sure. Let me answer that question, and first let me clarify. It's not that Vanguard is not the victim here. Vanguard is the victim and restitution was made to Vanguard. The problem for the government is that Vanguard is not the source of the funds as required by Stinson. Doesn't Stinson predate the change in the guidelines? No, Your Honor. Stinson is interpreting the change in the guidelines. Am I wrong about that? Yes. The guidelines were changed in 2001, and in 2013, Stinson interpreted the new text derived from as compared to the old text affected a financial institution. That was the purpose of the Stinson decision. Yes. Okay. I apologize. Well, go ahead and explain to us then why Stinson supports your position when particularly in light of what I take to be the argument from the government based on Shaw that the government is – in the bank fraud context. Yes. Shaw is really the only thing the government argues in its brief. Shaw is simply not on point. That's a case about bank fraud, 1344 of Title 18, a knowing scheme to defraud a financial institution. It does not involve the text that we have here, whether the gross receipts were, quote, derived from a financial institution. I understand it's a bank fraud case, and this is a guidelines case. But the language Justice Breyer uses is to say when he says the basic flaw lies in the fact that the bank, too, had a property interest. The bank ordinarily becomes the owner of the funds, and even when it's not the owner, it's like a bailee. Why isn't all that language exactly pertinent here in making the point that the source of the funds in a real sense is Vanguard? It's not pertinent at all to begin with because Vanguard is not a bank. So when Shaw is describing black letter law about the relationship between a bank and its customers, it's not describing Vanguard, which is an investment management company. A bank in Shaw can loan out the funds. In Vanguard's case, it's the account owner who benefits from the investment. Vanguard merely charges fees. Is Vanguard not the kind of institution that's included within the meaning of the guidelines when it talks about financial institutions? Vanguard, yes, Vanguard is a financial institution. The problem for the government, and why Shaw is not on point, is that the Stinson test, which is controlling, looks to ownership. And here, the account owner is the customer, not Vanguard. The court doesn't even need... We're right back to Shaw. That's exactly what Shaw is saying. Shaw is saying, yeah, the account holder owns the money, but there's a property interest, there's a kind of an ownership interest in the bank too. That's exactly on point, isn't it? What is different on that between what the Supreme Court says in Shaw and what you're arguing here? Yes, in Shaw, the Supreme Court says that a bank has the right to use the funds as a source of loans to help the bank earn profit. That's Shaw at 466. Vanguard does not have that right. In Vanguard's case, the account owner is the investor. It doesn't just say that. It says that the bank has a property interest, and it can use that money. Even if it's only a bailee, it has that possessory interest, which is a type of an interest and a property interest that makes it protectable as somebody, you could say, is the source of the funds and, therefore, the victim, doesn't it? So, again, the question of who is the victim is not the issue here. The victim is the one who ultimately suffers the actual loss. That's not the Stinson test. Stinson does not ask whether the financial institution has any property interest. What Stinson asks is who is the owner. I'm not confused about that, Ms. Horne, so I apologize if I'm leaving you under the impression that I am. What I am trying to get at is you seem to be saying that, hey, it's not a bank, it's different from a bank, I know it's not a bank, but isn't it exactly in the position of a bank in the sense that it's covered by the guidelines interpretation or the guidelines aiming at protecting financial institutions, and it stands like a bank does in the bank fraud context as a financial institution which has a property interest and, therefore, can be seen as the source of funds? I disagree, Your Honor. I don't see Stinson as asking whether the financial institution has any property interest. Stinson goes much farther in saying that the financial institution must be able to freely alienate the funds. Vanguard can't do that. In fact, it can only do one thing with these dormant accounts. It must turn them over to the state to be safeguarded for their owners. And in Delaware v. New York, the Supreme Court says even the bank, even if this were a bank, it would not have the right to retain abandoned deposits, and a sheet that affects no property interest of the bank. So this court can simply rule narrowly that even if the court felt that Shaw were relevant, which I disagree with, it would not apply to the dormant accounts at issue here. Well, we're certainly not talking about a sheetman here, right? I mean, if you're going to say Shaw doesn't apply because we're not talking about bank fraud, you're going to strain a hamstring reaching even further and start relying on a sheetman. That's got nothing to do with this, does it? No, Your Honor. I disagree completely. The Stinson test asks us about the ownership of the fund, and so when we have dormant accounts, we have to ask who the owner, and a sheetman is the answer to that. Delaware v. New York says the holder, which is Vanguard, has no interest in the funds. That's precisely the opposite of having a claim to the funds as an asset. I think it's no more far afield to argue a sheetman law than to argue 100-year-old banking law, as the government does by citing Shaw. In fact, I think a sheetman is the narrowest way to rule. At the same time, Vanguard has an obligation to turn the funds over to the state for a sheetman. It has no ability to decide one way or the other, and the original investors are entirely out of the picture. If you look at the role of Vanguard here, you're looking at Vanguard having an obligation to turn all these funds over to the state and be liable for the full amount, and is not Vanguard entitled to some protection because of that? Not under the Stinson test, Your Honor. When the funds are being turned over to the state, that's not that the owners are entirely out of the picture. The state is to safeguard those funds in perpetuity for the owners or their heirs. Stinson requires that the bank have unrestrained discretion to alienate the funds. That means that the bank could put the whole thing into lottery tickets or uranium stocks if it wanted to. The bank can't do that here. The bank must turn it over to the state to be protected for the owners. This is not the case where Stinson would be met if, for example, we were talking about a financial institution's own operating funds, such as a theft from payroll or inflated billings to a financial institution for capital improvements, or if we were talking about a different type of financial institution, such as an insurance company, which was the owner of its own funds. Here, Vanguard is an investment management company, and it does not meet the test of Stinson because it is not the funds and it does not have unrestrained discretion to alienate them. So, yeah, okay. Well, I think, I don't know, Judge Mady or Judge Roth, do you have any further questions for Ms. Horn? I have none. I just wondered if I may, are you content with the district court's fact-finding regarding the $1 million threshold to apply the gross receipts enhancement, and if not, where do you see error? Yes, Your Honor. So the first thing is that the court does not need to get there. It's certainly our position that the Stinson test is not met, regardless of the amount, because the funds were not derived from Vanguard. If the court were to disagree, then remand would be necessary to resolve the district court's May I also address a liability matter if I have a moment? I think I don't have time. We've kept you talking about this issue for most of your time, but let's have Mr. Ignal on for the government. Are you there, sir? Yes, Your Honor. Okay. Please proceed. Yes. Your Honor, at the end of the day, the district court did not make any error in calculating the ultimate guideline range, much less an error that was so obvious that it's subject to plain error review. And I'll address the two issues in the same order that Ms. Horn did. If we start with the abuse of trust enhancement. Yeah, let's do, but I want to ask you right off the bat. Would you agree or disagree that based on the Supreme Court's decisions in Rosales-Morales and Molina-Martinez, that we're already, the third and fourth prongs are off the table here. They're already satisfied because in Molina-Martinez, the court said that in most cases, a defendant who was shown to district court mistakenly deemed applicable and incorrect higher guideline range has demonstrated a probability of a different outcome. So if we accept that there was a mistake, prong three is met, and as to the fourth prong, the Supreme Court said in Rosales-Morales that where the guidelines have been miscalculated, a reasonable citizen would bear a rightly diminished view of the judicial process and its integrity. In short, I'm trying to narrow what we're going to be kicking around here. If we thought this was wrong, would you agree that based on those statements from the Supreme Court, prongs three and four of Olano of the plain error test would be met? I would agree with that in the sense that in our brief, we argued simply that it's not plain error because, A, it was not an error, but also it was not an obvious error. Okay. If the court would determine that were an obvious error, then I think Your Honor is correct. All right. Then we're talking about prongs one and two. So please take us to your position and why this is not error, speaking specifically to Ms. Horn's point that the PSR talks about things that Mr. Capps did to get the money out of the Vanguard accounts, not about things that he did in abusing a position of trust to launder that money. Well, the underlying facts in the PSR support the enhancement for both the underlying fraud and the money laundering. In a circumstance in which a defendant like Mr. Capps works for a financial institution, has the ability to defraud the financial institution, has the ability to direct where those funds go to further and facilitate the money laundering. He directed the funds to his brother-in-law. He then had the ability to delete any record of that from Vanguard. All that's understood. And their assertion is that all goes to the fraud, and if we take your interpretation of this, we completely ignore and undermine the application note 2C, because that is the abuse of the position of trust with respect to the underlying act, not with respect to the money laundering. How is that wrong? There can be circumstances in which the same conduct is a but-for causation and is essential to both the embezzlement, the fraud, and the money laundering. Answer Ms. Horne's argument, which is it will always be a but-for cause. Obviously, you can't money launder proceeds of criminal activity unless you've got criminal activity. That's the whole point of the application note is to say to district court judges, look, if you're going to do this, don't hit the person for the underlying action. Only use this application note and this enhancement if it's not associated with that underlying activity. You've got to answer that assertion that your argument proves too much, because there will always be but-for causation, except when, in the circumstance she outlined, where the activity is itself a banking person money laundering some drug dealer's stuff. Well, not every fraud necessarily creates the ability to engage in money laundering. A fraud committed by someone who's working at a financial institution with the ability to direct where those funds go probably does create a situation where a person who commits a fraud like that is necessarily going to be subject to both guideline enhancements. Help me then. What does 2C mean? Because I'm not sure I understand what's left of it. If we accept your argument that if it's a but-for cause it's good, then what does it wall off? What does that application note say that's meaningful? Imagine someone who is able to abuse a position of trust to commit some sort of a fraud or some sort of a crime but is not in a position to launder the funds. It could be, for example, Mr. Tobin who's in a position. Imagine you were in some sort of position that he could abuse a position of trust to accept the money. Maybe that would be a bad example. But where someone commits the fraud but has no ability to launder the funds, and maybe it would be someone who commits the fraud. If that's the case, Mr. Egelman, how could they be convicted of laundering the funds? We're talking about somebody who did both, which I take it is the whole purpose for the application note is to say you did both. And if you did both in a way that your position allows you to do both, then I think it applies to both of those. If you were able to abuse your position of trust only in one or the other, and it may be, as Ms. Horne pointed out, the drug trafficker. If someone in a bank simply laundered drug trafficking proceeds, that person would abuse their position of trust only with respect to money laundering. Right. There are a lot of circumstances where I think in this case you would necessarily have to do both. He would not be in a position to do that but for his position of trust. Let me ask you a hypothetical. The account that Mr. Capps sent the money to, that the money laundering then was accomplished by drawing checks from that account, what if Mr. Capps' cousin John was the one who wrote those checks? I'm not sure I'm following. Well, the fact you seem to imply that the fact that it was Mr. Capps who then withdrew the money from, he received two large checks. That's correct. It's the withdrawing of the money from the proceeds of those two large checks to other people that is the money laundering. That's my understanding. Is that correct? That's correct, Your Honor. Okay. So what if someone else drew those checks, not Mr. Capps? What if someone else had the ability to withdraw funds from the account that Mr. Capps put those checks in? I'm still trying to find it. I don't know that there would be money laundering unless it's part of Mr. Capps' scheme to disguise the nature and source of those proceeds. So then you say it would not be money laundering? Unless it's part of the scheme to disguise the nature and source of the proceeds, then I don't think there would be money laundering. It's part of the scheme. It's, you know, another guy's in on it, maybe he gets a little money. But how could Mr. Capps' position of trust then have anything to do with the money laundering? In that case, maybe it wouldn't. The question is if it's all part of the scheme and at the outset Mr. Capps makes a decision where to send the funds, how to delete any reference to where the funds are going, and then sets it up so that the funds are then diverted back to him in a way that conceals the source, that is money laundering in his position allows him to do that. If the money laundering were separate... I don't see how his position allows him to do it. His position allowed him to determine where the funds went to, similar as in Socolow, similar to what we cited in Young in the Sixth Circuit. It's the same conduct, but it allowed him to commit both offenses. No. There may be a circumstance... His conduct, the conduct that allowed him to steal the money is an abuse of the position of trust. Once he's got the money, what position of trust is he abusing in passing it on? Explain what position of trust he is using at that point. He's got the money in hand because he's abused his position of trust. Now what position of trust is he occupying when he gives that money to his compatriot in crime? The position of trust with Vanguard that allows him to determine where those funds are going to go. That's done. The money, that piece is over. He's got the money. He has the money. He determined where it was going to go. It could have gone in cash. It could have gone somewhere else. Right. If he deposited it into his own account, that would not necessarily be money laundering because that's not doing a very good job of concealing the source of the funds. Yeah, okay. If he did something later with it, then there might be a circumstance where he's only abused the position of trust with respect to the fraud. Yes. I apologize if I'm asking this in an ineffective or inarticulate way, Mr. O'Donnell, but I'm trying to get you to answer the question, what position is he using when he passes that? He's no longer doing anything with respect to Vanguard at that point. He's already stolen the money. He's got the money. At this point, he's handing it to somebody. How is that using a position of trust? Because he needs to use the Vanguard system there to determine where the funds go. Yeah, okay. It's not like he walked out with a priceless piece of art and then has it in his hand. When you say he has to use the Vanguard system to decide where it goes, he's using the Vanguard system to collect the money. At some point, he's got the money. He's converting it then into an account where he can launder it. No? Am I misunderstanding? That is correct, Your Honor. Okay. So here's the hypothetical. I'm not even sure it's a hypothetical at this point. He's stolen the money. Now he's got the money. Stealing the money in the way he did, I don't think anybody disagrees is an abuse of the position of trust. I don't think Ms. Horn is saying it. I don't think anybody on this panel is confused about that. Now the question that we're dealing with is, he's got the money in hand. The application note seems to be saying, now ignore how he got the money because that's not what you're supposed to be thinking about as you apply this question of enhancement for abuse of position of trust. Don't think about that. Now think about, is he abusing a position of trust as he does the next thing with the money? That's what I'm trying to get you to answer. What's the position of trust he's occupying having stolen the money in passing it off to his cohort in crime? The stealing of the money and the passing it off are done at the same time. The way he steals the money is to remove it from a given account and then direct it to his brother-in-law. If he were to somehow turn that money into cash and walk out with that, I think that would be a different situation. What he does with the money after that would be separate. It just can't be separated. There's no way to separate it in this factual scenario. In this fact pattern, that's correct, Your Honor. Okay. Now can we turn to the question of the financial institution? I'm going to be asking this, Warren, about this too. The application notes to 2B1.1 give certain definitions. 2B1.1 is the note that deals with larceny, embezzlement, et cetera, the underlying crime, and it defines financial institutions include an investment company or a mutual fund. Does that have any bearing or should it have a bearing when we're asking the question of whether the financial institution referenced with respect to these crimes is one covered by the guidelines? I think both parties agree that it is. I didn't see a dispute in that in the defendant's brief. I think we agree that Vanguard was a financial institution for purposes of the guidelines. The question is the $2.1 million that were the proceeds of this fraud, were they derived from a financial institution? That guideline doesn't talk about gross receipts. It doesn't talk about them necessarily originating from or being owned by the financial institution. It says they must be derived from them. So any ownership, even as a bailee, is going to be sufficient to bring Vanguard within that guideline. Again, I'm going to be asking Ms. Horn about this, but I'm trying to understand what would the purpose be of outlining financial institutions include mutual funds and investment companies. If it weren't the case, that they could be viewed as the source of funds when there's embezzlement or theft. I think that's why they're included in there. I think the concept is any time a financial institution loses a significant amount of money or is at risk of losing a significant amount of money, that deserves a guideline enhancement. It doesn't matter whether it puts them in financial jeopardy. What's the answer to her argument that Stinson, which quotes that application note that I just quoted in footnote 4, that Stinson sets forth a test that makes it so it just couldn't be the case that Vanguard can be viewed as the source of the funds here? I don't think that's what Stinson says. In fact, if we look at the Second Circuit's opinion in Huggins, they were actually concerned that the Stinson test would be overly broad and would apply any time there was account holder funds involved in a fraud because, as a matter of law, the financial institution has some interest in those funds, at a minimum, as a bailee. So I don't see this as what Stinson says. We're bound by Stinson. What the Second Circuit says is not what guides us. I understand that, but what the Second Circuit is saying is that Stinson would apply in this circumstance because Vanguard had an interest in the account holder funds that Mr. Capps stole. And, in fact, under Stinson, the case ends up being remanded because there are insufficient facts in the record, and the court there said, we're unable to conclude definitively that the enhancement does not apply because the record is unclear as to whether the two investment firms, in this case, invested any money on behalf of their clients. So even under the Stinson facts, where money simply went from clients of a third party, these investment companies, to the defendants, that enhancement could possibly apply. This is fundamentally different. In this case, Mr. Capps is an employee of the financial institution. He is defrauding the financial institution. He is putting the financial institution not just at risk of loss, but in addition where they've actually lost more than $2 million. So I can't imagine a circumstance where this enhancement would apply to, and the court has asked, a financial institution other than a bank if it doesn't apply here. Yes, with a bank, I suppose we could say, if someone fraudulently borrowed $5 million, then that enhancement would apply because it's the bank's money. But in this case, any funds within Vanguard are within their dominion and control. They have the ability to alienate those funds. And, in fact, they have an obligation in certain circumstances to alienate those funds and send them to the state when they're dormant, as they were in this case. When it says derived from a financial institution, when Simpson emphasizes that, as it does with Italics, in this instance, is it from Vanguard that those funds are coming, or is it from the accounts of the people being defrauded that Mr. Capps was stealing money from? I think that's a distinction without a difference because Vanguard is responsible for those funds, and money is fungible. So as the bailee at a minimum, the financial institution that's responsible, those funds are collected and owned by Vanguard. That's why Vanguard is ultimately liable to the account holder when Mr. Capps steals that money. So I'm not sure that's a distinction with a difference in this circumstance. Okay. All right. Judge Maynard, Judge Roth, further questions for Mr. Ignall? No further. I don't have anything further. All right. Thank you, Your Honor. Thank you very much. Ms. Warren, your rebuttal? Yes, Your Honor. The government mentioned liability and says that money is fungible. Liability was rejected in Stinson. The government argued that the defendant exposed the financial advisory firms to liability from its clients, and this court said that that potentially affected the financial advisory firms under the pre-2001 rule, but it did not satisfy the definition of derived from under the rule applicable here. That's Stinson at page 186. Yes. The government also said – yes. Hold on. Speak to the application, though, which specifically talks about investment companies and mutual funds. Is the government right in saying, hey, you concede, Mr. Capps concedes, that Vanguard is a financial institution that's anticipated and covered by 2B1.1, and yeah. So it's in the zone of the financial institutions that are supposed to be protected here. I agree only in part. I agree that it is a financial institution. If a builder put inflated billings to Vanguard, who is using its own money, its own operating funds, and built Vanguard out of $1 million of its own money, that would count. But you'll get out of customer money that does not. I understand, Ms. Horn, that the Stinson Commission went through the trouble of including investment funds and mutual funds in this because they were worried about them getting ripped off by their contractors. Because that seems a bit of a stretch. Aren't they in there precisely because they are the baileys of other people's funds? The problem with that argument, Your Honor, is that you're talking about Note 1, which applies to all of 2B1.1. And, for example, the provision about solvency of a financial institution in which the government fails to fight, which is the very next section. So there are other provisions of 2B1.1, the fraud guideline, that relate to financial institutions, not only the gross receipts enhancement. So that's a global definition there. It sure is. And we're trying to figure out whether it's a financial institution from which these funds were derived. And I guess I'm not hearing much of an argument that they're not. They are a financial institution. Now you're arguing that it wasn't really derived from them. And so we're back to the question of whether being a bailey at least is enough, right? Exactly. It was not derived from Vanguard. And being a bailey, remember, that may be some minimal property right, which is enough for bank fraud. But we're talking about $1 million that is Vanguard's own money. So if there's some minimal property right, let's say a percentage of a percentage that they're entitled to in fees, that's not $1 million. Warren, it doesn't say their own money. It says derived from them, right? So let's move on and have you answer Mr. Ignald's argument that in this factual circumstance you cannot untangle the theft from the money laundering. Those two things are happening at the very same time. And so the distinction that you've drawn in your briefing and that you've made here, it doesn't hold up because of the facts here are abusive at this position of trust happening simultaneously with laundering and theft. Yeah, absolutely not. Your Honor put it, I think, in a question earlier that the dividing line is when there are proceeds. And so when the checks are directed to be endorsed, that's absolutely on the mail fraud side of the line because there are no proceeds. There may be other statutes that are fuzzier, but the money laundering statute is not. There has to be a discreet predicate crime before you get to money laundering. The transfer from the dormant accounts of Vanguard to Mr. Tobin is the mail fraud. And then Tobin writing checks to Mr. Capps from his personal bank account, a subsequent transfer, is the money laundering. This is an easy case to draw that line. Okay. Well, thank you. I've taken up your three minutes in full with five questions. Is there anything you wanted to add before we wrap up, Ms. Horn? Thank you, Your Honor. Just finally to say the government mentioned that Vanguard could alienate the funds to the state, but the Stinson test is unrestrained discretion to alienate. That does not mean having one option of what to do with them. That means putting it into lottery tickets if you want to. All right. Judge Mady or Judge Roth, anything further from Ms. Horn? Nothing further. Nothing from me. Okay. Then we thank counsel for argument today. We appreciate it. And for the briefing, we've got the matter under advisement, and we'll recess quickly.